UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JANICE JEFFERS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | NO. 3:17CV731-PPS |
|  | ) |  |
| DAVID A. HOUPT and STEVEN R. HOUPT, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## OPINION AND ORDER

Before the Court is defendants David Houpt and Steven Houpt's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. [DE 6.] The defendants, who are proceeding in this case *pro se*, have moved to dismiss this action, claiming that this Court lacks personal jurisdiction over them and that venue is improper. In the alternative, they ask that this case be transferred to the district court in Florida, where both of them reside. In reviewing the defendants' motions I am cognizant of the fact that "[a] document filed *pro se* is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, despite being given ample opportunity to present evidence in support of their position, the defendants have simply ignored orders of the court. For this and other reasons, I will deny their motion.

### Background

Janice Jeffers is a resident of Elkhart, Indiana. While vacationing in Florida, she agreed to loan money to David Houpt, her then son-in-law, and Steven Houpt. Both of

the Houpts reside in Florida. According to Jeffers, both of the defendants knew at the time that Jeffers resided in Indiana. [DE 1 at 1 ¶¶1, 5.] The Houpts had first reached out to Jeffers to engage in this transaction while Jeffers was in Indiana. [DE 7 at 7.]

On January 27, 2010, Jeffers and the Houpts executed a promissory note totaling $500,000 in which the Houpts agreed to make payments to Jeffers commencing on April 1, 2010 and each month thereafter, until the debt was paid in full, at an interest rate of 7.42%. [DE 1 at 2 ¶¶7, 9.] The promissory note was signed by the Houpts, and notarized, in Florida. [DE 1-1 at 1-2.] There is no information before me as to where Jeffers was when this happened, since she doesn't appear to have signed the promissory note. [DE 1-1.]

Upon execution of the promissory note, Jeffers contacted her financial institution in Elkhart, Indiana and wired the funds to the Houpts in Florida from her Indiana bank account. [DE 1 at 2 ¶8.] The Houpts made a few payments on the loan to Jeffers' bank account in Indiana. [DE 7 at 8.] However, after making some payments, the Houpts defaulted, failing to make payments as outlined in the promissory note. [DE 1 at 2 ¶11.] Notwithstanding their failure to make payments, the Houpts continued to make oral promises to Jeffers that they would make good on the promissory note, and they promised to repay the loan with interest. [DE 1 at 2 ¶12.] Jeffers was residing, and located, in Indiana when these representations were made to her. [DE 1 at 2 ¶¶12, 23; DE 7 at 2-3.]

On September 22, 2017, Jeffers filed suit alleging that the Houpts breached the contract and committed fraud. [DE 1.] In response, the Houpts filed a motion to dismiss

on October 18, 2017. [DE 6.] They argued that this Court has no personal jurisdiction over them because all of the events surrounding the promissory note occurred in Florida, not Indiana. [DE 6.] Importantly, the Houpts failed to provide any evidence in the form of affidavits or otherwise to support their position.

After the motion to dismiss was fully briefed, I reviewed the parties' arguments regarding personal jurisdiction. I found the Houpts' position to be a potentially meritorious one, but it was not supported by any evidence. So I decided to afford the Houpts 14 days to supplement their motion with evidence. [DE 14.] They did not do so. In yet another attempt at fleshing out whether I have personal jurisdiction in this case, I set a hearing in which I told the parties that I wanted to discuss the issue of personal jurisdiction. [DE 16.] Neither of the Houpts bothered to show up.

**Discussion**

Once the defendant moves to dismiss the complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Without an evidentiary hearing on the issue, the plaintiff need only make a prima facie showing that the defendants are subject to personal jurisdiction.[1] *Id.* To determine whether exercising personal jurisdiction is proper, a court may receive and weigh

---

[1]Although I held a telephonic hearing on May 11, 2018, I did not hold an evidentiary hearing. Therefore, the plaintiff need only make a prima facie showing that the defendants are subject to personal jurisdiction. If the hearing had been an evidentiary hearing, the plaintiff would be required to establish jurisdiction by a preponderance of the evidence. *Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014).

affidavits prior to trial on the merits. *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983). I must accept as true all well-pleaded facts alleged unless controverted by affidavit. *Purdue Research Found.*, 338 F.3d at 783-84. The plaintiff is entitled to have any conflicts in the affidavits (or supporting materials) resolved in her favor. *Id.* at 783.

The Houpts argue that there is no personal jurisdiction here and, without any evidence or affidavits, have made unsupported statements claiming that the only connection Indiana has to this case is that the funds were wired to them from Jeffers' bank in Indiana. In response, Jeffers adds that the Houpts also made promises to pay Jeffers back while she was in Indiana and also made payments to the Indiana bank. Additionally, she notes that both of the Houpts were aware that Jeffers was an Indiana resident, and they reached out to her while she was in Indiana in hopes that she would lend them money. She further observes that all of harm that she suffered was experienced in Indiana, where she has been deprived of more than $500,000 to which she is entitled.

A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction. *Id.* at 779. Thus, the crucial question here is: would a court in Indiana have jurisdiction over the Houpts? To answer this question, I look to Indiana's long-arm statute, Indiana Trial Rule 4.4(A). That provision provides for eight bases for asserting jurisdiction. Relevant for our purposes, the long-arm statute adds that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the

United States." Ind. Trial Rule 4.4(A). The Indiana Supreme Court has held that "Indiana's long-arm provision 'reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause.'" *Adv. Tactical Ordnance Sys.*, 751 F.3d at 800 (quoting *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006)).

I proceed then to the question of whether my exercise of personal jurisdiction would be inconsistent with the federal constitution. There are two types of personal jurisdiction: general and specific. However, general personal jurisdiction is appropriate only where the defendant can be said to be "at home." *Adv. Tactical Ordnance Sys.*, 751 F.3d at 800. There appears to be no dispute that the Houpts are not "at home" in Indiana. Therefore, I confine my discussion to the law governing specific jurisdiction.

A defendant is subject to personal jurisdiction in a particular state only if the defendant had "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). It is unconstitutional to force a defendant to appear in a distant court unless it has done something that should make it "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). In other words, the inquiry is: has the defendant purposely availed himself of the benefits and protections of conducting activities in the forum state? *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

With respect to specific personal jurisdiction in the context of contractual

matters, the Supreme Court has laid out some guidance. A contract with an out-of-state party alone does not automatically establish sufficient minimum contacts in the other party's home forum. *Burger King*, 741 U.S. at 478. Instead, the Supreme Court has directed courts to take a "highly realistic" approach to the question and to place the contract in the context of the entire transaction. *See id.* at 479. In particular, courts must consider prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other. *See id.*; *see also Purdue Research Found.*, 338 F.3d at 781 (citing *Burger King*, 741 U.S. at 478-79).

Based on all of the facts before me, as alleged by Jeffers, I find that the Houpts purposely availed themselves of the benefits and protections of conducting activities in Indiana. The Houpts knew that Jeffers was a resident of Indiana when they reached out to her to initiate this transaction. The Houpts borrowed $500,000 from Jeffers, and they knew that if she was out $500,000, she would experience that harm – by virtue of being deprived of money – in Indiana, where she lived. Thus, the Houpts' intentional conduct in Florida was calculated to cause injury to Jeffers in Indiana. This injury in Indiana, brought on by the Houpts' intentional conduct, cuts strongly in favor of finding that personal jurisdiction exists. *See Calder v. Jones*, 465 U.S. 783, 791 (1984).

The fact that the Houpts engaged in a contract with an Indiana resident is not enough, in and of itself, to establish personal jurisdiction. "The quality and nature of an interstate transaction may sometimes be so random, fortuitous, or attenuated that it cannot fairly be said that the potential defendant should reasonably anticipate being haled into court in another jurisdiction." *See Burger King*, 471 U.S. at 486 (internal

quotation marks omitted). But there was nothing random or fortuitous about the acts in this case. In addition to Houpts' causing injury to Jeffers in Indiana (by depriving her of $500,000 she would have used in Indiana), the Houpts were the ones who reached out to Jeffers, whom they knew to be an Indiana resident and to be actually located in Indiana at the time they initiated contact with her. Jeffers wired the money from her bank in Indiana to the Houpts in Florida. The Houpts knew the money was coming from Indiana. The Houpts also made some payments to Jeffers' Indiana bank account while Jeffers was back in Indiana. Moreover, the Houpts made oral promises to Jeffers, while she was in Indiana, that they would pay back the money they borrowed. Jeffers alleges that these oral promises constitute fraud.

In addition to purposeful activities directed at the forum state, the nature of the contract at issue also supports exercising personal jurisdiction over the Houpts. Contracts that envision continuing obligations on behalf of the defendants in the forum state are more likely to constitute the kind of minimum contacts due process requires. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 495 (7th Cir. 2014) (citing *Burger King*, 471 U.S. at 480, and *Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Comm'n*, 339 U.S. 643, 648 (1950)). Here, the Houpts agreed to make multiple payments over the course of more than four years to Jeffers whom they knew to be an Indiana resident. Thus, the promissory note called for an ongoing relationship with, and continuing obligations to, Jeffers in Indiana.

Another factor supporting personal jurisdiction is that the Houpts reached out to Jeffers in the first instance to request the funds at issue. "The question of which party

initiated or solicited a business transaction has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction." *Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1202 (7th Cir. 1985). Jeffers says that Houpts first contacted her in Indiana to initiate the loan. And the Houpts knew they were reaching out to an Indiana resident in order to conduct this transaction.

I acknowledge that this is a close question. It's true that some of the conduct in this case directed at Indiana was Jeffers', not the Houpts'. But I still find that there is sufficient purposeful activity directed at Indiana on the part of the Houpts to support personal jurisdiction. First, the Houpts initiated the transaction with a person they knew to be an Indiana resident. Recall that Jeffers was David Houpt's mother-in-law at the time of the transaction; he undoubtedly knew where she resided. Second, the money was wired came from Jeffers' Indiana bank. Third, the Houpts made payments to an Indiana resident to fulfill their obligations under the contract. And fourth, the Houpts made allegedly fraudulent representations to a Jeffers, an Indiana resident, while she was in Indiana.

There is also no obstacle to asserting personal jurisdiction over the Houpts even though Jeffers does not allege that the Houpts never came to Indiana to negotiate or execute the transaction. Importantly, physical presence in the forum state is not required. *Id.* So while the Houpts never set foot in Indiana, they directed their conduct to a resident of Indiana, while she was in Indiana, through acts that were neither random nor fortuitous.

Once it has been decided that a defendant purposefully established minimum

contacts, those contacts may be considered in light of other factors to determine whether asserting personal jurisdiction would comport with "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. In particular, I may consider, among other things, the burden on the defendant, the forum state's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief. *Burger King*, 471 U.S. at 476-77. Where personal jurisdiction is proper, the defendant must present a "compelling case" that the presence of some other considerations would render jurisdiction unreasonable. *Id.* at 477. The Houpts have made claims that the only reason Jeffers is filing the suit in Indiana is because the statute of limitations has expired in Florida. But that has nothing to do with personal jurisdiction. Instead, that is a choice of law question to be answered during consideration of the merits of the case. They also argue that the witnesses are mostly located in Florida and that Jeffers herself spends a significant amount of time in Florida. Again, these things are neither here nor there for purposes of personal jurisdiction.

In sum, I find that asserting personal jurisdiction would comport with fair play and substantial justice. Although the defendants reside in Florida, the plaintiff resides in Indiana, and she is a 74-year-old woman for whom prosecuting her case in Florida would be difficult. Indiana has a substantial interest at stake here, as one of its citizens was deprived of use of her money here. Based on all of the facts above, I find that Jeffers has established a prima facie case that personal jurisdiction exists over the defendants in this case.

Because personal jurisdiction is waivable, *see Mobile Anesthesiologists Chicago, LLC*

*v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010), I will also address the Houpts' failure to heed any of my directives to supplement their motion to dismiss and to participate in a hearing. "To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Id.*

    I expressed concern about the issue of personal jurisdiction, but since the Houpts hadn't done enough to warrant dismissal, I afforded them an opportunity to supplement their motion to dismiss. They didn't respond. The Houpts also didn't show up to a hearing meant to explore the question of personal jurisdiction. I can only give the Houpts so many chances to supplement their motion. Although the Houpts filed a motion to dismiss and a reply on this question, they have since ignored two Court orders concerning their motion. Jeffers has understandably sought to move this litigation along and has filed a motion for summary judgment. At this point, their actions suggest to me that they no longer intend to defend their position that there is no personal jurisdiction here.

    The Houpts also claim that the Northern District of Indiana is an improper venue. Federal Rule of Civil Procedure 12(b)(3) states that a party may move to dismiss a case for "improper venue." Fed. R. Civ. P. 12(b)(3); *see also Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. For Western Dist. Of Tex.*, 571 U.S. 49, 55 (2013). On a motion to dismiss for improper venue, the plaintiff bears the burden of establishing that the venue it has chosen is proper. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972). In resolving

the issue, I must take all allegations in the complaint as true, and although I may examine facts outside the complaint, I must resolve all factual conflicts and draw all reasonable inferences in the plaintiff's favor. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). The question then is whether a substantial part of the events giving rise to the claim occurred in the Northern District of Indiana.

Several significant events giving rise to Jeffers' breach of contract claim occurred in the Northern District of Indiana. All of the same facts that support exercising personal jurisdiction also support finding that venue is proper. Therefore, my analysis concerning personal jurisdiction is equally applicable here. Most notably, all of the harm that has befallen Jeffers by virtue of her being deprived of this money has occurred in the Northern District of Indiana.

The events giving rise to Count Three, in particular, (the fraud claim) support venue in this district. Jeffers was in Elkhart, Indiana when she received representations from the Houpts that they would repay the loan, and the Houpts knew that she was in Indiana when they made these representations. It is these representations that Jeffers alleges constitute fraud.

Finally, Jeffers is a 74-year-old woman living in Elkhart, Indiana. It would impose a substantial burden on Jeffers to require her to prosecute her claim in any other district, particularly considering the substantial connection that this district has to the

facts underlying her claim. Based on these facts, I find that venue is proper in the Northern District of Indiana.

**Conclusion**

For the reasons stated above, the Houpts' motion to dismiss is denied. Jeffers has also moved for summary judgment, to which the Houpts have not yet responded. The Houpts are afforded 28 days to respond to the motion for summary judgment. Jeffers may file a reply no later than 14 days after the Houpts' response. The Houpts are cautioned that their failure to respond to the motion for summary judgment may result in judgment being granted in favor of Jeffers and against the Houpts.

**ACCORDINGLY:**

The defendants David Houpt and Steven Houpt's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [DE 6] is DENIED.

The plaintiff Janice Jeffers' Motion to Strike [DE 9] is DENIED AS MOOT.

The plaintiff Janice Jeffers' Motion Requesting Ruling on Plaintiff's Motion for Summary Judgment [DE 13] is DENIED AS MOOT.

The defendants David Houpt and Steven Houpt are afforded until July 3, 2018 to answer or otherwise respond to the complaint.

The defendants are afforded until July 31, 2018 to respond to the plaintiff Janice Jeffers' Motion for Summary Judgment [DE 10.] The Houpts are cautioned that failure to respond could result in judgment being granted in favor of the plaintiff.

The plaintiff Janice Jeffers may file a reply within 14 days of the Houpts' response.

**SO ORDERED.**

ENTERED: June 12, 2018

                                           s/ Philip P. Simon
                                           PHILIP P. SIMON, JUDGE
                                           UNITED STATES DISTRICT COURT