UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JANICE JEFFERS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) NO. 3:17CV731-PPS |
| | ) |
| DAVID A. HOUPT and STEVEN R. HOUPT, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is plaintiff Janice Jeffers' Verified Motion for Default Judgment. [DE 23.] Jeffers seeks a judgment by default against defendants Steven Houpt and David Houpt. In support, she has filed a verified motion that supports her claims for damages and costs. [DE 23.] She has also submitted an affidavit supporting her claim for attorney's fees. [DE 22-1.] She represents that her damages are $780,409.26 as of August 15, 2018, with per diem interest of $96.53 after that date until the date of judgment. [DE 23.]   For the reasons that follow, I will grant Jeffers' motion for a default judgment as to her breach of contract claim, but I will deny her motion as to the other counts.

### Background

On January 27, 2010, Jeffers and the Houpts executed a promissory note totaling $500,000 in which the Houpts agreed to make payments to Jeffers commencing on April 1, 2010 and each month thereafter, until the debt was paid in full, at an interest rate of

7.42%. [DE 10-2 at 1; DE 1-1 at 1.] In the event that the Houpts failed to make any required installment payment due under the note within 30 days of its due date, the promissory note provided that the entire amount of unpaid principal would become immediately due and payable at the option of Jeffers without prior notice to the Houpts. [*Id.*] The promissory note also called for the Houpts to pay Jeffers' attorney's fees should she prevail in a lawsuit to collect on the note. [*Id.*] The Houpts also agreed that, because there was more than one borrower, they would be jointly and severally liable. [*Id.*] The promissory note was signed by the Houpts, and notarized, in Florida. [DE 1-1 at 1-2.]

Jeffers lent the money to the Houpts, providing them with $100,000 on February 1, 2010 and $400,000 on February 4, 2010. [DE 10-2 at 1.] The Houpts made a few payments on the loan; $10,0000 was paid on five separate dates: May 3, 2010; June 1, 2010; July 6, 2010; August 2, 2010; and October 4, 2010. [*Id.* at 2.] However, after making these payments, the Houpts defaulted, failing to make payments as outlined in the promissory note. [*Id.*] Notwithstanding their failure to make payments, the Houpts continued to make oral promises to Jeffers that they would make good on the promissory note, and they promised to repay the loan with interest. [*Id.*] Jeffers is the holder of the note, as she has not assigned it to anyone. [*Id.* at 1.]

The procedural background of this case is messy. On September 22, 2017, Jeffers filed suit alleging four causes of action: (1) breach of contract, (2) account stated, (3) fraud, and (4) constructive fraud. [DE 1.] The Houpts responded with a motion to dismiss for lack of personal jurisdiction. [DE 6.] Before I ruled on the motion to dismiss,

Jeffers filed a motion for summary judgment. I asked the Houpts to supplement their motion to dismiss with evidence, but they never responded. [DE 14.] I then held a hearing on the personal jurisdiction issue raised in the motion to dismiss, but the Houpts did not appear. [DE 19.] I subsequently denied the Houpts' motion to dismiss, finding that there was personal jurisdiction. [DE 20.]

I also set deadlines for the Houpts to answer Jeffers' complaint and respond to Jeffers' motion for summary judgment. The deadline to answer Jeffers' complaint was July 3, 2018. The Houpts' response to Jeffers' motion for summary judgment was due on July 31, 2018. Those dates have come and gone, and the Houpts have neither answered the complaint or otherwise responded. Jeffers now seeks a default judgment on all four of her causes of actions. Her motion for summary judgment also remains pending, and both motions are now ripe for my decision.

## Discussion

Federal Rule of Civil Procedure 55(a) governs the entry of default and default judgment. When a defendant fails to answer a complaint or otherwise defend himself, the clerk can make an entry of default. Fed. R. Civ. P. 55(a). "Entry of default must precede an entry of default judgment." *Wolf Lake Terminals, Inc. v. Mutual Marine Ins. Co.*, 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005). "Although Rule 55(a) refers to the entry of default by the clerk, 'it is well-established that a default judgment may also be entered by the court.'" *Id.* (quoting *Breuer Elec. Mfg. Co. v. Tornado Sys. Of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982)).

3

Here, the clerk has not made an entry of default. When deciding a motion for entry of a default judgment, if there is no entry of default by the clerk, the Court can treat such motions as a request for both an order to the clerk to enter default and entry of default judgment. *Id.* I will therefore consider Jeffers' motion as requesting both an entry of default and a default judgment.

A default judgment establishes, as a matter of law, that the defendant is liable to the plaintiff for each cause of action in the complaint. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). I am to consider a number of factors when deciding a motion for default judgment, including "whether there is a material issue of fact, whether the default is largely technical, whether the plaintiffs were substantially prejudiced, and how harsh an effect a default judgment might have." *Wolf Lake*, 433 F. Supp. 2d at 941; *see* Wright & Miller 10A FEDERAL PRAC. & PROC. § 2683 (3d ed.). All well-pleaded facts are taken as true for purposes of liability. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *Cameron v. Myers*, 569 F. Supp. 2d 762, 764 (N.D. Ind. 2008).

Jeffers has moved for a default judgment on all four of her claims, so I will address these factors for each claim in turn.

*Count One - Breach of Contract*

Under Indiana law, in order to establish a breach of contract, a plaintiff must demonstrate "the existence of a contract, the defendant's breach thereof, and damages." *Am. Family Mut. Ins. Co. v. Matusiak*, 878 N.E.2d 529, 533 (Ind. Ct. App. 2007) (quotation omitted). "A party who fails to make payments as required by a contract is guilty of a

4

breach thereof." *Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 758 (Ind. Ct. App. 2002). "The party asserting a breach of contract bears the burden of proof." *Ind.-Am. Water Co. v. Town of Seelyville*, 698 N.E.2d 1255, 1258 (Ind. Ct. App.1998).

At the outset, I note that there is a question as to whether Indiana law applies at all because the promissory note was signed in Florida and the Houpts were Florida residents at the time. However, Florida law appears to mirror Indiana's law on this point. *See DNA Sports Performance Lab, Inc. v. Club Atlantis Condo. Ass'n, Inc.*, 219 So. 3d 107, 109 (Fla. Dist. Ct. App. 2017) ("The elements of a cause of action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and [(3)] damages that resulted from the breach.").

The promissory note submitted by Jeffers specifies that Jeffers was to lend the Houpts $500,000 to be repaid over the course of five years at a rate of interest of 7.42%. Payments were to commence on April 1, 2010. [DE 1-1.] According to Jeffers' affidavit, the $500,000 was paid to the Houpts in two installments: $100,000 on February 1, 2010, and $400,000 on February 4, 2010. [DE 10-2.] Jeffers represents that she has never assigned the promissory note. [*Id.*] She also represents that the Houpts made five payments totaling $50,000 pursuant to the promissory note: $10,000 each on May 3, 2010, June 1, 2010, July 6, 2010, August 2, 2010, and October 4, 2010. [*Id.*] After October 2010, the Houpts failed to make any other payments to Jeffers, although they continued to promise that they would make additional payments. [*Id.*]

These facts taken together state a claim for breach of contract. Jeffers has

5

established the existence of a contract by providing the promissory note signed by the Houpts. The Houpts' failure to make payments as outlined by the contract constitutes breach. And Jeffers has suffered damages – in the amount of the unpaid principal plus interest – as a result of the breach.

Given that the facts as alleged state a claim for breach of contract, I will also address the other factors I am to consider before entering a default judgment. First, it appears that there is no material issue of fact since Jeffers has submitted the promissory note signed by the Houpts and an affidavit explaining that the Houpts defaulted on the note. The Houpts, despite having contested personal jurisdiction, never actually disputed that they defaulted on the loan.

Second, the default is not largely technical because the Houpts have been given numerous opportunities to respond to this lawsuit but have failed to do so. Although they initially filed a motion to dismiss for lack of personal jurisdiction, they have not filed anything in this case since November 17, 2017. [DE 8.] I asked the Houpts to submit evidence in the form of affidavit or otherwise to assist me in determining whether there was personal jurisdiction in this case, [DE 14], and the Houpts ignored my order. I then held a hearing to get to the bottom of the issue and to give them another chance to submit evidence. [DE 16, 19.] They didn't show up to this hearing.

Since the Houpts stopped responding, Jeffers also filed a motion for judgment, which went unanswered. [DE 10.] After the Houpts didn't respond to the motion for summary judgment, Jeffers requested a ruling on her motion, which again the Houpts

did not respond to. [DE 13.] After denying the Houpts' motion to dismiss, I set deadlines for the Houpts to answer the complaint and respond to Jeffers' motion for summary judgment. [DE 20.] Both of those dates have long passed. Indeed, assuming judgment is entered on September 20, 2018, it will have been 79 days since they were required to answer and 51 days since they were required to respond to the summary judgment motion. In addition, Jeffers moved for a default judgment on August 13, 2018, and the Houpts have still not said a word. [DE 23.]

The third factor also favors a default judgment because Jeffers is entitled to a judgment after having suffered damages. Finally, although a default judgment is harsh, the Houpts are obviously aware of this lawsuit and have decided not to participate. Jeffers is therefore entitled to a default judgment on her breach of contract claim.

*Count Two - Account Stated*

Jeffers has also moved for a default judgment on her account stated claim. In Indiana, an "account stated is an agreement between the parties that all items of an account and balance are correct, together with a promise, express or implied, to pay the balance." *Jackson v. Trancik*, 953 N.E.2d 1087, 1091 (Ind. Ct. App. 2011) (citing *B.E.I., Inc. v. Newcomer Lumber & Supply Co., Inc.*, 745 N.E.2d 233, 236 (Ind. Ct. App. 2001). An agreement that the balance is correct may be inferred from delivery of the statement and the account debtor's failure to object to the amount of the statement within a reasonable amount of time. *Auffenberg v. Bd. of Trustees of Columbus Reg'l Hosp.*, 646 N.E.2d 328, 331 (Ind. Ct. App. 1995).

Based on the allegations made by Jeffers and all of the evidence presented, I have no reason to believe that there was any agreement between the parties that all of items of the account and balance are correct and that there was ever a promise to pay that balance. Jeffers has submitted no information concerning whether she ever delivered a statement that included the balance owed. Because, even if I accept all Jeffers' allegations, there are still lingering questions about whether the parties ever agreed to a final amount owed, and whether there was any promise to pay the balance, default judgment is not appropriate on this claim.

*Count Three - Fraud*

Jeffers next moves for a default judgment on her fraud claim. "The essential elements of actual fraud are a false material misrepresentation of past or existing facts, made with knowledge or reckless ignorance of the falsity, which causes reliance to the detriment of the person relying on the representation." *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 125 (Ind. Ct. App. 1992). "[A]ctual fraud may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions, or statements of existing intent which are not executed." *Id.; see also Doe v. Howe Military Sch.*, 227 F.3d 981, 991 (7th Cir. 2000).

The entirety of Jeffers' fraud claim is that the Houpts represented to Jeffers that they would make payments on the promissory note and then they failed to do. She says they had no intention of making the payments and that their representations to do so were false and misleading. She further claims that the Houpts made these

8

representations knowing they were false or with reckless ignorance of their falsity. Jeffers says she relied on these representations to her detriment and sustained damages as a result.

Jeffers is not entitled to judgment on this claim because, even accepting all of Jeffers' well-pleaded facts as true, the promises made by the Houpts were not statements of "past or existing fact." Rather, they were representations regarding future conduct. Such representations cannot support a fraud action. *Id.*; *see also Wells v. Stone City Bank*, 691 N.E.2d 1246, 1250 (Ind. Ct. App. 1998) (representations that a bank would honor checks in the future were not actionable). Therefore, Jeffers is not entitled to a default judgment on this claim.

*Count Four - Constructive Fraud*

Finally, Jeffers moves for a default judgment on her constructive fraud claim. "Constructive fraud is the breach of a legal or equitable duty which is fraudulent as a result of its tendency to deceive others, to violate a public or private trust, or to injure the public interests." *Comfax Corp.*, 587 N.E.2d at 125. It arises by operation of law when there is a "course of conduct which, if sanctioned by law, would secure an unconscionable advantage, whether or not there is actual intent to defraud." *Doe*, 227 F.3d at 991. The elements of constructive fraud are: (1) a duty existing by virtue of the relationship between the parties; (2) representations or omissions made in violation of that duty; (3) a reliance on the representation or omission by the individual to whom the duty is owed to the detriment of that individual; (4) injury as a result of the reliance;

9

and (5) the gaining of an advantage by the defrauding party over the complaining party. *Id.*

"In constructive fraud, the law infers fraud from the relationship of the parties and the circumstances which surround them. This special relationship is shown when the parties have fiduciary duties to each other." *Comfax Corp.*, 587 N.E.2d at 125 (internal citations omitted); *see also Heckler & Koch, Inc. v. German Sport Guns GmbH*, 2014 WL 12756372, at *12 (S.D. Ind. May 15, 2014). There is no definitive list of the "special" relationships giving rise to fiduciary duties, but they include "attorney and client, guardian and ward, principal and agent, pastor and parishioner," and close familial relationships. *Heckler & Koch*, 2014 WL 12756372, at *12; *see also Lucas v. Frazee*, 471 N.E.2d 1163, 1166–1167 (Ind. Ct. App. 1984). Outside the fiduciary context, constructive fraud may also arise in buyer-seller relationships where "one party may be in the unique possession of knowledge not possessed by the other and may thereby enjoy a position of superiority over the other." *Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind. Ct. App. 1994). However, "as a matter of law," there is no special relationship between parties when they "deal at arm's length." *Lyntech Eng'g, Inc. v. SPX Corp.*, 2010 WL 5027139, at *4 (N.D. Ind. Dec. 2, 2010).

In support of this claim, Jeffers again relies on the misrepresentations the Houpts made to her that they would make payments on the promissory note. She adds that the Houpts benefitted from the misrepresentations they made to Jeffers and that she sustained damages as a result. But she has failed to explain what special relationship

10

existed that would create any duty.

I recognize that Jeffers was, at the time, the mother-in-law of one of the Houpts and that close familial relationships may possibly serve to establish the existence of a special relationship. However, I am dubious that this particular relationship – between a woman and her son-in-law – would qualify as a "close familial relationship."

Even if it was a close familial relationship, Jeffers has not actually alleged or ever argued that she and the defendant had "special relationship." *See Mudd v. Ford Motor Co.*, 178 F. App'x 545, 547 (7th Cir. Apr. 12, 2006) ("Normally the 'special relationship' is a fiduciary or confidential one between the parties."). Moreover, she was the mother-in-law of only one of the defendants. It's not at all clear what special relationship she had with the other Houpt beyond his being related to her son-in-law. In any event, Jeffers also has not alleged how the representations made by the Houpts were made in violation of the duty they supposedly owed to her. Accordingly, she is not entitled to a default judgment on this claim.

*Amount of Damages*

Because Jeffers is entitled to a default judgment on her breach of contract claim, I must also determine the amount of her damages. In the context of a default judgment, the amount of damages must be proven with facts beyond the allegations of the complaint. *See Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994) (citing *United States v. DiMucci*, 879 F.2d 1488, 1497 (7th Cir. 1988) ). Thus, upon considering a motion for default judgment, a court may need to hold a hearing to determine damages. *See Dundee*

11

*Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). But in cases where damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits, such a hearing is unnecessary. *e360 Insight*, 500 F.3d at 602.

Jeffers has supplied this information and indicates that the Houpts owe her $780,409.26 in principal and interest on the loan, as of August 15, 2018, plus per diem interest of $96.53 up to the date of judgment. Jeffers has supplied a reasonable way of calculating the interest due, and the amount of principal plus interest owing on the loan is capable of objective ascertainment. Therefore, I will accept her representations. I expect judgment to be entered on September 20, 2018, so Jeffers is entitled to a default judgment in the amount of $783,884.34.

*Attorney's Fees*

Jeffers has also submitted an affidavit from her attorney outlining the amount of attorney's fees she is entitled to under the terms of the promissory note. However, the Court is without sufficient information to determine whether the attorney's fees are reasonable in this case. Therefore, Jeffers should submit a more detailed accounting of her attorney's fees in a separate fee petition in accordance with Federal Rule of Civil Procedure 54.

**ACCORDINGLY:**

Plaintiff Janice Jeffers' Verified Motion for Default Judgment [DE 23] is GRANTED as to Count One. The Clerk is directed to enter default against the

defendants and to enter final judgment on Count One in favor of plaintiff Janice Jeffers and against defendants Steven Houpt and David Houpt, jointly and severally, in the amount of $783,884.34.

Jeffers' Verified Motion for Default Judgment is DENIED as to Counts Two, Three, and Four.

Jeffers' Motion for Summary Judgment [DE 10] is DENIED AS MOOT.

**SO ORDERED.**

ENTERED: September 20, 2018

                                        s/ Philip P. Simon
                                        PHILIP P. SIMON, JUDGE
                                        UNITED STATES DISTRICT COURT